Please state your name for the record. Karen Grohman for Plaintiff Appellant Shannon Riley. I will try to save two minutes for rebuttal. All right. Your Honor, the district court in this case granted summary judgment over an admission of wrongdoing on an issue where the other side bore the burden of proof. Keep in mind that Mr. Riley's case survived the screening procedures of the Prison Litigation Reform Act, which are designed to screen out frivolous, malicious, implausible, or complaints that fail to state a claim upon which relief can be granted. But it's not the same standard. You can survive screening and still summary judgment can be appropriate. So let's address it on summary judgment. I agree with you. I agree with you, Your Honor. Summary judgment. I mean, one doesn't follow that the other doesn't conflate it and make it res judicata, as it were. No, of course not, Your Honor. I apologize for implying that it did. The point is that summary judgment pleadings here added almost nothing to the record that wasn't in the complaint. Mr. Riley's summary judgment pleadings mirrored his complaint. Again, he was pro se below. And the summary judgment pleadings from the other side were just a denial of the allegations in the complaint and a competing story of events and how things happened. Well, let me ask you this. You submitted a letter very recently, and there was a response that had to do with, I believe it was, Correctional Officer Morris. Yes, Your Honor. And tell me a little more. How did you figure this out? Because your client, prior to you being involved, I think, signed something under penalty of perjury that said that Officer Morris, I mean, his whole theory against Officer Morris was that he signed his worksheets that gave him credit for conspiracy, and now what you're saying is that Officer Morris didn't sign that. Yes, Your Honor. So two things about that. So one of them is that my client so in the briefs I've chosen to specifically focus on July 8th and 9th because those are the most detailed allegations of the days. But in the pleadings below, my client stated, again, that the refusal to let him out of his cell for work was continuous. It wasn't simply July 8th and 9th. The reason that I submitted the letter, Your Honor, is because I accidentally cited an April 2009 timesheet to the court, that's ER 474, and said that it was a July 2009 timesheet. So I didn't want to leave the court under the impression that Officer Morris had signed his timesheet in July 2009. But the other thing about that is if you look at these timesheets, Your Honor, for example, July 2009 is on ER 422. The ‑‑ there's a supervisor's name at the top of the timesheet, which here, sorry, July 2009 is at ER 87. I apologize, Your Honor. The supervisor's name at the top of the timesheet doesn't necessarily, isn't necessarily the same supervisor that signed under the timekeeper's signature block for all of the days in the work. And this is largely illegible. But the point is that the important point here is that not necessarily that Officer Morris falsified timesheets in July 2009, but that over the course of several months starting in July 2009,  would record that he worked time that day when he, in fact, was not let out of his cell. Well, my understanding, though, of in prison that, I mean, you would obviously have a stronger retaliation claim if he didn't get his credit for the time because prisoners, when they work in prison, that affects when they get out of prison because they're working against their good time, work time credit. And so in this situation, regardless of whether, it appears to me that they said, regardless of whether you cut haircuts that particular day or not, you still get your credit. So how is he really retaliated against? Well, Your Honor, the time credits are important. The pay is important, although he makes 17 cents an hour, so it's de minimis. But he got paid for the full day, right? Yes. And he gets the credits for getting out. And so his whole thing is that I want to handle how I get my haircuts the way I want to handle it or I want to sit at that desk the way I want to handle it. Even if I'm not cutting hair, I want to be able to sit there and wait for haircuts as opposed to what they told him is, hey, either go out to the yard or go back and lock up. And, you know, he wants to control where he roams and when he roams. And the prison is saying, hey, we have reasons to make sure we want him where we want him. Yes, of course, Your Honor. He doesn't have an entitlement to wander around the prison. But the correctional officer's story doesn't make sense because what they say is you're not let out of your cell unless inmates need a haircut. But no one has ever explained how, aside from the district court, who cited something in the record that neither correctional officer cited in their declaration, no one has explained how he's supposed to know whether inmates need haircuts or not if he's not let out of his cell at 6 a.m. to compile a list. So their right, his right is to be free from retaliation. But what's your best against their, apparently there is a prison policy that they, there's been, I think you attempt to establish that normally he was just let out and he could collect names. But the policy is you only get out. That's not the policy. That's not the stated policy. So tell me your best, giving all inferences in favor of Mr. Riley, what's his best retaliation claim here? I agree with you, Your Honor, that it's prison policy. But prison officials are not allowed to apply even a neutral, objectively justified policy if it's in retaliation. And that is what this Court has repeatedly said, including in Vignolo v. Miller, which is an authority that the defendants rely on to say that he doesn't have an entitlement to work. Well, there was a case where someone didn't get breakfast and they were allowed to go forward, right? Right. And so, but denying food to me could make a person, even one meal could make a person think, well, okay. I mean, when you're in prison, you have no control. You don't get to provide your food. You don't get, you know, to go to the bathroom, any of those things. But in terms of if he's getting his credit for his, he got credit for his hours, so that means he gets the pay. He gets the, you know, and he gets the credit for his good time, work time. So, but he doesn't get to go out and talk to other people. He may not get to sit at his desk. Is that your, is that the retaliation? The adverse action here is being locked in his cell instead of being released to complete his work assignment. As you say, to socialize with other inmates and just in order to participate in prison life. He's not in solitary. He's not, you know, locked up in isolation. Could you help me now in light of these further information? Could you just go through the status as you see it of the claims with respect to each defendant? So we're arguing for reversal of summary judgment against Officers Roach and Officers Morris. And then you have the appeals. We have three other defendants' appeals coordinators, which the claims against those appeals coordinators were screened out under a 12b6 standard under the Prison Litigation Reform Act. And as I understand it, those defendants are not represented here. So the question for you is the same question that was before the district court, whether under the Prison Litigation Reform Act the case should be screened out or state's a legitimate claim. Or let the, have the State answer. The State would answer below, yes, if you remember. That's what, as to them. Now, as to Roach? Summary judgment was granted in his case. Yes. And your position now is what? That grant of summary judgment should be reversed and the case should return to trial. Because? Because the district court applied the wrong legal test. It put the burden of but-for causation on my client when the burden is on Officers Roach and Morris under Mount Healthy and a lot of precedents of this Court. Ms. Rothman, you made reference to the district court's opinion about the burden of coming forward with evidence once that there was direct evidence here, as I think the district judge. There was direct evidence against Officer Roach. Here, I'm at the district judge's opinion. This is at excerpts of the record 17. Accordingly, Roach reasonably could have concluded that he would receive a list of inmates needing haircuts from the housing unit officer and plaintiff would only be released. Were you referring to that part of the opinion that is unsupported by Roach's or any other evidence? Yes, Your Honor. Okay. Now, the other thing I wanted to ask you about, I have two affidavits from other prisoners. Are you familiar with these affidavits? Yes, Your Honor. We do not rely on them. I'm referring to excerpts of the record of 255 and 256. To me, these appear to be corroboration of the plaintiff, Mr. Riley's, claim of unequal treatment that the rule has been enforced against him and not against others. Is that your case? The unequal treatment goes to the claim against Officer Morris just in terms of inconsistency with his previous actions. We're not raising an equal protection claim. We're saying sorry. Right. Under the circuit's, quote, modified Mount Healthy test, what does the State have to show in terms of the balancing test? They have to show that in light of Mr. Riley's evidence of retaliation, that they would have taken that action anyway. And the circuit has said that that's most often a jury question. Are we talking about Morris now? This applies to both defendants. Both defendants. Both have to show they would have taken the same action anyway. And this Court has said that that is a jury question in Care Partners, LLC. So what's Morris's action is what? Morris's action is, over a period of several months, not releasing my client from his cell and reflecting on the timesheets that that happened anyway. In addition, there's other things that are indicative of his changed behavior towards Mr. Riley. Counsel, you've got a problem with Morris because of the timing, don't you? A problem with the timing? Between the action, the claimed retaliation, and the action of Morris against Riley. I don't think there's a timing problem. The grievance came before the actions of Officer Morris. The grievance was in April of 2000. Well, you've got direct evidence against Riley, don't you? Against Roach, yes. There's no direct evidence against Morris, is there? No, Your Honor. Okay. It's circumstantial. I guess that was kind of my point. Yeah, you're correct. All right. Okay. I see that I've exceeded my time. All right. I'll give you a minute for rebuttal. Thank you, Your Honor. Okay, thank you. Good morning. Good morning. Please proceed. May it please the Court, my name is Jamie Ganson, and I represent the correctional officers Roach and Morris in this action. This Court should affirm the district court's grant of summary judgment on the First Amendment retaliation claims against correctional officers Morris and Roach. Based on Riley's letter filing two days ago, Officer Morris was not responsible for the alleged unconstitutional conduct, and Officer Roach neither retaliated against Inmate Riley when he would not allow Riley out for work as a barber on July 8th and 9th, 2009, when there had been no haircuts scheduled under the barbering policy, nor when he issued two disciplinary violations eight and 11 months after that for stand-alone violations of prison rules, one of which Riley admitted to. First, Riley's retaliation claims against Officer Morris stem from what Riley claimed was the falsification of his time card on July 8th and 9th, 2009. That is, Riley received full pay and work credits when he did not perform any barbering duties. But what we know now, based on Riley's April 7th, 2014 filing, is that Morris was not responsible for that time card. Kagan, you didn't know that before. What happened here? I'm assuming that counsel pointed it out as an officer of the court that wanted to, you know, when they became involved, and we appreciate that, but it would seem that that's favorable to your position. It is, Your Honor. As far as the records on appeal, the copy is very poor, and my copy, I could not tell that it was not officer of the court. Well, but I guess what I'm asking is wouldn't Officer Morris have been given an opportunity to look at it and say, is this your signature or not? Unfortunately, I did not handle the case below, and I cannot speak to whether that occurred. Well, I think if someone would have shown it, we know our own signature, and he would have been part of it, and he might have been, you know, you would have had a stronger argument on summary judgment. I agree that that would be the likely, what I would expect to be the course of conduct. However, because no viability exists under Section 1983 when the named correctional official is not responsible for the conduct alleged, Riley's claim against Morris is untenable. All right. But they're alleging that the but-for test isn't correct. What's your response to that? Concerning Officer Morris? Well, both of them, they're saying that basically that they would have done the same thing, you know, they would have done the same thing whether the comment was made or not. With respect to Officer Morris, I would say that we don't even reach the but-for test because there was no evidence that he had actually had any retaliatory intent, had any knowledge of Riley's grievances. And Riley admitted as much in the opposition to his MSJ. He said, no, no, no, I'm not saying that Officer Morris was retaliating against me. He just jumped on board. He seemed to jump on board just fully based on his conduct. So there was really nothing there that made that prima facie showing. With respect to Officer Roach, if this Court were to find that the allegations concerning the Vasquez grievance met the prima facie showing, then Mount Healthy Direct's the but-for causation analysis, where defendants have a burden to show on a preponderance of the evidence that they would have acted the same way regardless of Riley's conduct. And both of the defendants did meet this burden. Officer Roach's declaration specifically says this is the policy that was in effect. We credit the time across the board when the inmates were willing to work but not available. And with respect to Officer Roach, he also had a declaration explaining the reasons that supported why he decided to release or not release Riley. And he provided three specific reasons, all prison security and safety concerns. One of those concerns was he said that he would not release Riley to further prison security when no haircuts had been scheduled. Here Riley concedes that no list had been scheduled. And there's absolutely no evidence. But he's saying he used to be able to get out and go see if anyone wanted a haircut. And that was what? And that very well may be true. However, Officer Riley was on his first two days on the job. The actual barbering policy, which was before the court on summary judgment, places the responsibility for creating that list of inmates requesting haircuts with the housing officer. There was no, absolutely no evidence in the record to show that Riley, excuse me, that Officer Roach on his first two days on the job had any awareness that this task had been delegated to inmate Riley. And absent that evidence, there's no factual predicate from which any inference could be drawn. Well, there's the one statement. Okay. Roach doesn't remember anything. But he said I wouldn't have retaliated against him. But anyway, the one statement that Riley makes is something, and we don't like paper pushers, you know, and referred to Vasquez. And apparently there was a complaint against Vasquez. So, all right, he gets that. On summary judgment, he gets that inference as true. So you have to, you know, so we have to, so that has to somehow not be enough. What's your best case for that? So under Mount Healthy, it's a but-for causation inquiry. And as this Court held recently in Carl v. Codd, a Ninth Circuit 2012 opinion, the officers escape liability if they show that there was a mixed motive and they would have taken the same actions absent the protected conduct unless the plaintiff creates a dispute. And that's where this case falls. There was direct evidence showing a second motive that was lawful, that motivated by prison security and security, excuse me, prison safety and security, and that protected, that the Roach and Morris's actions would have been the same regardless because they were following these policies and procedures. And Inmate Riley offered absolutely nothing to dispute that in the district court. Mr. Ganson, hard as it is for me to believe that a district judge could make a mistake, I have a question, the same question I pose to counsel. The district judge says, accordingly, Roach reasonably could have concluded, and then she goes on to say, he would have received a list of inmates. I can't find that anywhere in Roach's affidavit or in the record. Where is that supported? I think that could have probably been phrased better. I think what the district court judge was really saying was that there was no evidence to support an inference otherwise, because in order for an inference to be drawn in Riley's favor, that Officer Roach knew that those duties had been delegated to him, there has to be some factual predicate. And here the facts actually cut against any such inference, because it shows that it was Officer Roach's first two days in the job and there was a policy in place that directed that another correctional officer was to create that list. But isn't the district court speculating reasonably could have, not that he did, but that he could have? I mean, isn't that speculation? Yes. However, even with that set aside, there's still no evidence in the record on this element that could support an inference in Riley's favor. Well, isn't she drawing an inference in favor of Roach here? That's what she's doing. She's saying that could have happened. I mean, he could have concluded that or not. Because there was no evidence to support any other inference. And that is the plaintiff's burden in bringing a dispute and opposing an MSJ as a nonmoving party and under the Mount Healthy test as well. Defendants are absolved of liability if they show they would have taken those same actions, unless plaintiff created a dispute. And here he did not. I have a question that kind of going off of that. If the – I think the district court also said they were entitled to qualified immunity. Do you really have to win before that? Assuming that Riley established a triable issue of causation for his retaliation claims, how do we grant qualified immunity where a jury could find these officers intended to punish him? I mean, how do we get, you know, because on the qualified immunity, then we're supposed to say, you know, I guess the argument that they were – they'd say it's clearly established you can't retaliate against people. So if there's a triable issue on that, how do we – how does he get qualified immunity? Because if – if the court were to find there was a constitutional violation, and we're also – Or a triable issue on that. Or a triable issue. Thank you. And they were – and it was also found that Officer Roach had established that he would have taken the same action regardless of the conduct. So even if a constitutional violation occurred, but Officer Roach met his burden under Mount Healthy, in that case, it would be proper to grant qualified immunity because a reasonable officer would not have known that the conduct with a mixed motive where they've shown the same action would have happened anyway would have violated the law. And this situation is addressed in Carl v. Caw as well, Your Honor. Okay. Does anyone have further questions? You cited the Saussure v. Katz. Hasn't that been overruled by Pearson v. Callahan? We district judges no longer have to determine if there's – isn't it discretionary with the district court now we can do the first part of the analysis for the second, and if we toss it on either ground, these learned appellate judges will affirm  Isn't that the case? The portion of Saussure that requires the two prongs to be in a certain order has been overruled, and the district court or any court has discretion to address them in any order, yes, Your Honor. Okay. Ms. Ganson, what do you make of these two affidavits by prisoners that I referred to with appellants counsel? They seem to me to corroborate motive, causation, pretext, and I'm referring again to 255 and 256 of the record. Your Honor, I think they're problematic on a number of elements. The first of all is the comparison to every other worker. Again, the haircutting job was unique in that it's not where they're out cleaning or sweeping floors. There have to be people that request haircuts. So it's distinguishable there. There's also no dates in these declarations, and so it's impossible to tell if these are just general statements that do not corroborate his specific evidence of July 8th and 9th. Yes, Your Honor. Okay. In addition to that, most of these things that these inmates are seeing, they don't test to any improper motive. They test to a ‑‑ a test to behavior.  Which may not be the most desirable behavior, if taken as true. However, even with that, they don't show the improper motive that would be necessary to support a retaliation claim. And without that, this whole claim fails. And especially with respect to the rule violations at issue here. They were 8 and 11 months after the grievance against Officer Vasquez, and there's absolutely no evidence linking the rule violations to that grievance. So, just as well, since we have the time here, you responded in the letter to the Morris. So is it your position if Morris didn't sign that on those dates, it collapses? Yes, Your Honor. This whole claim against Morris was based on him being responsible for the time card. So there's two major reasons that this claim collapses. First of all, because he wasn't responsible. And the second, as I believe you pointed out earlier, Morris's sole action in this claim is crediting a time card. That is not adverse. Regardless of whether Riley was able to exit his cell or not, all Morris can be held accountable for under Section 1983 are his own actions, which were not adverse. And you add to that the fact that a two-day paid absence from work without Morris has never been found unconstitutional in the retaliation context by this circuit. And there are three Sixth Circuit opinions on point that all find similar leaves of absence in the employment context to be insufficient to state a retaliation claim as a matter of law. It's de minimis. Well, what about if the breakfast case where someone was denied breakfast, that's only like one meal as opposed to two days not going to work? What would be your argument? Why is this less than that? I think there's a significant difference here because prison concerns can come up regularly when inmates have to stay in their cells. It's not adverse on its own for an inmate to be kept in his cell because that's the normal place where he would be. In addition to that, he was paid for his time. He earned work credits. It's a two-day paid leave from work regardless. I know the plaintiff speaks to the values of a prison job and learning opportunities and psychological benefits, but we're talking about two days here. It's de minimis. And even were this Court to find that two days were enough to constitute a constitutional  right, I think the question is, how do we make it so that such a deprivation would be actionable? Okay. Ms. Ganson, I know this is ‑‑ excuse me. Ms. Ganson, let me ask you, this ‑‑ and I don't know how this works in your circuit, but the ‑‑ you began the brief with kind of a balancing test between the cost of court intervention, excessive court intervention versus the obvious constitutional right to be free from retaliation. How does that play in the analysis here? I mean, are we supposed to weigh, well, this isn't really very important, and we all know and take judicial notice that prison administration is an impossible job, but does that play at all? I mean, if it's a violation of a constitutional right to be free from retaliation, what does the dicta about excessive involvement in prison administration, what does that mean in reality? I think the problem with excessive involvement, especially on retaliation claims, which are so easy to make, and this is one thing that qualified immunity speaks to, we don't want to discourage our correctional officers from doing what they need to do to maintain institutional security and safety based on some fear that they may get sued for retaliation down the line. And I think that is a huge concern. And as well as the deference to correctional officials, they need to be able to take the more conservative action and take actions to sometimes restrict inmates to their cells for safety reasons to ensure those inmates' safety. And, again, if the judiciary becomes too involved in these decisions, the officers that are subject to liability may hesitate to do what they need to do to perform their jobs correctly, and that's something we don't want to encourage. Thank you. So in sum, we ask that the Court ---- You're done. Thank you, Your Honor. We're way over. You're done. Thank you. I'll give you, since we've been asking a lot of questions, and I think that it's obviously we want to we'll give you three minutes for rebuttal. Judge Pratt, I'd like to address your question first about balancing the interests, the correctional interests here. The law is very clear that correctional officers cannot take objectively reasonable actions if they are, in fact, motivated by retaliation for a First Amendment claim. And the law has other ways of dealing with claims that are clearly frivolous. I open by citing the Prison Litigation Reform Act. That allows district courts to screen out not only complaints that fail to state a claim, but those that are frivolous or malicious or implausible. In addition, the Prison Litigation Reform Act gives a prisoner three strikes. If after you've filed three frivolous complaints, you no longer get IFP status. So the question in this case where a district court granted summary judgment on an erroneous legal theory is not whether there's been an abuse of the system or whether the correctional officers are dealing with too much litigation. The question here is simply whether Mr. Riley created a genuine dispute of fact over causation. And on that note, I would say that everything that defendants refer to in support of their causation argument is basically just saying that this is a mixed motives case. They could have, as the district court said, acted for all of these legitimate reasons. And we are not denying that prison administration safety and security are legitimate reasons. But the Supreme Court has made it clear that mixed motives case can go to a jury unless the defendant shows that they would have taken the challenged actions anyway. And this Court has indicated in Care Partners LLC v. Lashway, which is not in my brief, but it's at 545 F3rd 867, that the third step of Mount Healthy is most often a jury question. And in this case, you can see why. Your Honors, we're asking about the ---- This is about as low as a bar is we're ever going to go. And so I think that's why, you know, we're asking all of these questions. Yes, of course, Your Honor. But important to keep in mind in this case that you opened by asking about Officer Morris's why did no one give him a timesheet? Why did he say this is not my signature? That's because nothing like that happened in this case. It was submitted on the pleadings. The defendants had no opportunity or the defendants didn't ask for the opportunity to take a deposition of Mr. O'Reilly to cross-examine the inmates who submitted the affidavits. They just submitted pleadings. And on the pleadings, they don't they there is a triable issue of material fact. Ms. Crofton, when you talk about damages, you mentioned a person of ordinary firmness. If a person is retaliated against, is that in and of itself sufficient damage to make a submissible case? Yes, Your Honor, it is. And that is that. And what's the plaintiff have to prove, that he is a person of ordinary firmness? No, the plaintiff does not have to prove that. The plaintiff has to prove so the person of ordinary firmness standard overlaps with whether the action was adverse in the first place. And this Court explained all of this in Rhodes v. Robinson. Okay. And then in Mendocino Environmental Center, the Court added that this prong basically requires a showing that defendants intended to demonstrate, intended to interfere with his constitutional rights, which is a retaliation claim. All right. Thank you both for your helpful argument in this matter. And once again, thank you for doing pro bono work for the Court. Thank you.
judges: Pratt, Schroeder, Callahan